# RUTLAND COUNTY.

## JANUARY TERM, 1834.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
  "   STEPHEN ROYCE,
  "   JACOB COLLAMER, } *Assistant Justices.*
  "   JOHN MATTOCKS,

RUTLAND,
*January,*
1834.

### MEACHAM *vs.* FAY.

When a man purchases land, as bounded on the pitch of another, enters into possession, to a certain line, as the line of that pitch, and continues in possession for over twenty years, he is entitled to recover against a stranger to the title, on a declaration describing the land according to his deed, without making strict proof of his boundaries.

The person in possession may prove that the persons who claimed and owned the pitch had commenced an action of ejectment against him for land of which he was possessed, and that judgment was rendered thereon in his favor, for the purpose of establishing the lines of their respective claims.

A mere stranger to the title who has trespassed on possession of another, cannot control the line thus established by possession and judgment, unless he can prove an actual survey and pitch.

A plan of the town, the declarations of the claimants, and the existence of an old line, are not sufficient for this purpose in defence, in an action brought by the person in possession against such stranger.

This was an action of trespass, *quare clausum fregit,* for cutting trees on a piece of land situated in Rutland and described as follows : "beginning at Jonathan Fenn's south-west corner of his house lot in October, 1802, thence north on said Jonathan Fenn's west line, until it strikes the south line of Capt. John Smith's pitch of land, thence west on said Smith's south line till it strikes the west line of the town of Rutland, thence south on the town line till it strikes John Smith's north line of his three rights of land on which he lived in 1802, thence east to the north line of said Smith's three rights till it strikes the bounds begun at, being the same land deeded by James Mead to Jacob Meacham, 12th October, 1802, and recorded in the

7th book of the records of the town of Rutland, page 252."
It was admitted that Jacob Meacham was dead and that the
plaintiff is an heir of the said Jacob. The plaintiff introduced
the deed above described, which contains the above description,
with the following additional description, "laid to the third di-
vision of the original right of Benjamin Melvin, containing
eighty acres, more or less." It was proved that Jacob Meach-
am more than twenty years previous to the commencement of
the suit, went on with one Zebulon Ames, a surveyor, and
surveyed out a lot of land which he then supposed to be in
pursuance of his deed aforesaid, commenced at the south-west
corner of Jonathan Fenn's lot aforesaid, which lot was after-
wards owned by Rufus Clark, and thence northerly on the west
line of said lot one hundred and seventy-three rods to the north
west corner of said Fenn's lot, thence west to the town line,
thence south on the town line to the north line of Smith's three
rights aforesaid, thence east on said north line to the bounds
begun at, containing about one hundred and twenty acres. It
was admitted that the plaintiff and his ancestor had been in the
quiet and peaceable possession of the land in pursuance of his
survey aforesaid, from the time of the survey until the com-
mencement of this suit. The witness of the plaintiff who had
made the survey aforesaid for said Meacham also testified, that
about thirteen years after he made said survey, and a short
time previous to the commencement of the suit, heirs of Smith
against Meacham, hereafter mentioned, he was called to make
a survey, for the heirs of John Smith, of the said Smith pitch.
He was guided in making said survey by the plan of the town of
Rutland, and that he commenced at the north-east corner of the
line previously surveyed for said Jacob Meacham, thence west-
erly in the north line of the land he had previously surveyed
for said Meacham twelve rods, thence northerly at right angles
about thirty-five rods, thence westerly at right angles to the
west line of the town of Rutland, thence southerly on said
town line to a point forty-five rods south of the north line of
the lot surveyed for Meacham aforesaid, thence a straight line
to the east line of said Meacham's lot, forty-five rods south of
the first bound, thence to the bound begun at. It was proved
that the trespasses complained of were committed on the land
contained between the line run for the north line of the Meach-
am lot, and the line run as aforesaid for the south line of the

RUTLAND,
January,
1834.

Meacham
vs.
Fay.

Smith pitch. The defendants made no claim of the title to any part of the premises, nor to any authority or license from any one claiming title; but contended that the trespasses were not committed on the premises described in the declaration of the plaintiff.

On the trial of the cause the plaintiff offered to prove the declarations of David Smith and Joel Smith, sons and heirs of Capt. John Smith aforesaid, who are since deceased, that the Smith Pitch was located north of the land of Meacham and of Jonathan Fenn aforesaid; to which evidence the defendant objected, but the court overruled the objection and admitted the evidence. The plaintiff also offered in evidence the record of a judgment in an action of ejectment in favor of Daniel Smith, John Smith, Hiram Elijah Smith, and Sarah Gedding, the heirs of Capt. John Smith aforesaid, against the plaintiff, for the land therein described, commenced on the 16th day of July, A. D. 1821, returnable at the July term of the Rutland county supreme court, A. D. 1821, in which cause the defendant recovered final judgment at the February term of the Rutland county supreme court, A. D. 1824; to the introduction of which evidence the defendant objected; but the court overruled the objection and admitted the evidence. The defendant then offered to prove by the plan of the town of Rutland that the south line of Capt. John Smith's pitch of land was south of the place where the trespasses complained of were committed, accompanied by evidence that there was an old line previous to the execution of the deed by James Mead to Jacob Meacham aforesaid, where the defendant claims the south line of the Smith pitch to be. He also offered to prove by the grandchildren of Capt. John Smith the declarations of Capt. John Smith and also the declarations of David Smith and Joel Smith aforesaid, all deceased, at a different time than that to which the plaintiff had given testimony, accompanied by evidence of the existence of the old line, that the south line of Capt. John Smith's pitch of land is south of the land where the trespasses were committed; but offered no evidence of any actual survey of the John Smith pitch, except the one made by Zebulon Ames aforesaid. This evidence was objected to by the plaintiff, and the court decided that as the plaintiff had been in the actual occupation and possession of the land in question to the north line, as surveyed by Ames, for more than twenty years

previous to the commission of the trespasses complained of, and a judgment had been rendered in favor of Meacham, the plaintiff, in the suit commenced against him by the heirs of Smith as aforesaid, the line between the heirs of the Smiths and Meacham was established in the place claimed by the plaintiff and acquiesced in by the heirs of Smith, and that the evidence offered was irrelevant, and theiefore rejected the same; to which decision the defendant excepted. A verdict having passed for the plaintiff, upon the exceptions taken by the defendant the cause comes here for revision.

RUTLAND
January,
1834.

Meacham
vs.
Fay.

*M. M. Strong for defendant.*
*Waller and Clark for plaintiff.*

The opinion of the court was pronounced by

WILLIAMS, C. J.—This is an action of trespass *quare clausum fregit.* To maintain it, the plaintiff may rely upon his possession alone. It was wholly unnecessary for him in his declaration to give a particular description of his lands by boundaries. The particular boundaries could only become of consequence if the defendant shew or claimed a title. In this case there would have been no necessity for giving any evidence in relation to the boundaries, unless the plaintiff had made it necessary by his declaration. In no case in proof of abuttals is strict literal proof necessary.—*Roberts* vs. *Kar,* 1 Taun. 507. When a defendant does not justify under a title, and appears in no other light than a mere wilful intruder on the lands of another, he is not to require too much critical nicety in proof of the particular boundary set up in the declaration. When a plaintiff has made out a *prima facie* case, and the only object of the defendant is to turn him over to a new action, or to an amendment of his declaration, without its affording either justification or extenuation of him, he at least must be held to make full and ample proof on his part. In this case, the ancestor of the plaintiff received a deed of the premises in question in 1803.—He soon after caused a survey to be made conformable to his deed, as he supposed, went into possession, and he and his son, the present plaintiff, have remained in possession ever since. After he entered into possession, the heirs of John Smith commenced an action of ejectment again him, and failed to recover. The plaintiff having thus been in possession

for about thirty years, the defendant enters and commits the trespasses complained of; the plaintiff commences this suit, describing the land in his declaration as it is described in his deed, supposing that it had been surveyed according to the deed. On trial, he proves the defendant to have been a trespasser in his possession, and is met with an attempt, not to shew a title out of him, but that he had misdescribed his land in the declaration. If there was any merit in this defence, it would have been founded only in this, that after a recovery, the defendant might still have been liable to another action for the same trespass, either by the plaintiff in a suit describing the *locus in quo* differently, or by some one else who had a title to the premises. But as the plaintiff entered into possession of the *locus in quo* under a deed and a survey intended to be in pursuance of the deed, claiming it as a part of the land contained therein, he would maintain no other action for this trespass by varying the description in his declaration, and the defendant was protected from a suit brought by any one else, as the title of the plaintiff was established by the statute of limitations, even if it had no better foundation. The first question which has been here presented arises on the objection of the defendant to the admission of the testimony of the declarations of David and Joel Smith, and the records of the judgment rendered in a suit brought by the heirs of Smith against the plaintiff. If this testimony had been objected to as immaterial, it might probably have been rejected—but this does not present a ground for reversing the judgment if it could have had no improper effect on the jury. It is to be observed, that it was the object of the defendant to shew that the south line of Capt. John Smith's pitch was south of the place where the trespasses were committed, and between that and the north line of the plaintiff's possession, and that the trespass was on that pitch. The testimony in relation to the declarations of two of the heirs of Smith, introduced by the plaintiff, was to show that this pitch, as they claimed it, was north of the plaintiff's land; it was therefore to prove nothing further than what now appears was contended for by the defendant; but at the time it was offered, to wit, before the plaintiff had made out his case, it was obviously proper for the plaintiff to prove that this pitch lay north of his land. The plaintiff then proved, that the heirs of Smith caused a survey of their pitch to be made, and

RUTLAND,
January,
1834.

Meacham
vs.
Fay.

that survey having interfered with the possession of the plaintiff, caused an action of ejectment to be brought against the plaintiff to recover for that part of the land where the surveys interfered, in which action judgment was rendered in his favor. The effect of this judgment according to our statute was conclusive as to the title between the heirs of Smith and the plaintiff. It was already in evidence, that a great part of the land which had been surveyed as the John Smith pitch, lay north of the possession of the plaintiff; that the action was commenced by the heirs of Smith before the statute of limitations had protected the plaintiff in his possession, if his possession was on that pitch ; and as there was no evidence that the heirs of Smith had ever deeded this land to the plaintiff, the evidence offered tended to show that the line of the Capt. John Smith pitch, as between his heirs and the plaintiff, was established and confirmed as bounding on the possession of the plaintiff. If it was necessary, therefore, for the plaintiff to go into evidence of his boundaries, this testimony—to wit, the declarations of the deceased heirs as to the location, and the record of the judgment in the action of ejectment—were pertinent, proper, and at least *prima facie*, if not conclusive evidence, as to the line between them. The inquiry then will be, whether the testimony offered by the defendant and rejected by the court was properly excluded. We are to take it for granted here, that all the testimony on this point, which the defendant could procure, was offered; and it is very evident that it was wholly insufficient to establish the point which he was endeavoring to establish. The first evidence should have been, to have shown a pitch or survey actually made ; and it is worthy of consideration, whether any thing else could avail him, when he was endeavoring to question a line unquestioned by those in interest. The evidence which was offered was, 1st. The plan of the town ; 2nd. Declarations of John Smith and his two sons, now deceased ; 3d. The existence of an old line. There was no pertinency in any part of this testimony, taken together or separately. The plan of the town, in itself, would prove nothing relevant to the issue. For some purposes, it might have been evidence. If it had been made from actual surveys, which were lost, it would afford evidence of the location, and if acquiesced in, might be evidence of a location and also of a division in fact; but it could not be received in evidence to prove the

RUTLAND,
January,
1834.

Meacham
vs.
Fay.

length or breadth of the lots. Moreover, testimony had already been given, that a survey, purporting to follow the plan, had been made, and that that survey interfered with the plaintiff's claim. This, of itself, was sufficient evidence for that purpose, and rendered the introduction of the plan wholly unnecessary. The declarations of Capt. Smith and his children were inadmissible on several grounds. The declarations of persons in interest in their own favor can never be given in evidence. It is to be observed that they were not offered for the purpose of proving any particular boundary or line, but that Capt. Smith and his children owned or claimed land south of the plaintiff's line. It is obvious that their declarations or claim could not establish their right; and further, their claim had once been successfully resisted by the plaintiff when they attempted to enforce it against him. As to the existence of an old line, this also was already in evidence by the testimony of Mr. Ames; but the existence of this line did not tend to prove that it was made for a line of the Smith pitch, or that any such pitch was made; nor was there any offer to show by whom or for what purpose it was made. The whole evidence, then, was properly rejected as wholly insufficient for the purposes for which it was offered by the defendant, of proving the fact which the defendant wished to establish. Indeed it seems that most of it was already in evidence on the part of the plaintiff, and the rejection of it when offered by the defendant was no more than an expression of the opinion of the court upon its sufficiency for the purposes contended for by the defendant, and we think the county court were correct in their views upon the subject.

The judgment of the county court is therefore affirmed.